UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CANDENCE VEIL RAIN,

                    Plaintiff,

   v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

Case No. 2:15-cv-01480-RBL

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

THIS MATTER is before the Court on Plaintiff Rain's Complaint [Dkt. #1] for review of the Social Security Commissioner's denial of her application for supplemental security income ("SSI") benefits.

Rain suffers from affective disorder, anxiety disorders, and histrionic personality traits. *See* Dkt. 6, Administrative Record ("AR") 16. She protectively filed an application for SSI benefits in May 2012, alleging she became disabled beginning in January 2001. *See* AR 13. That application was denied upon initial administrative review and on reconsideration. *See id*. A hearing was held before Administrative Law Judge Irene Sloan ("the ALJ") in October 2013. *See id*. Rain did not appear at the hearing. *See id*. Rain's counsel appeared at the hearing, as did a vocational expert. *See id*. The ALJ found no good cause for Rain's failure to appear at the hearing and issued a decision based on the medical evidence of record. *See* AR 14.

The ALJ determined Rain to be not disabled. *See* AR 13-35. The Appeals Council denied Rain's request for review, making the ALJ's decision the final decision of the Commissioner of

ORDER - 1

Social Security. *See* AR 2-7; 20 C.F.R. § 416.1481. In September 2015, Rain filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 1.

Rain argues that the Commissioner's decision to deny benefits should be reversed and remanded for an award of benefits, or for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in determining Rain's severe impairments; (3) in evaluating Rain's credibility; (4) in assessing Rain's residual functional capacity ("RFC"); and (5) in finding no good cause for Rain's failure to appear at the hearing. The Commissioner argues that the ALJ committed no harmful error at those stages, so the ALJ's finding that Rain could perform work available in the national economy and is therefore not disabled was supported by substantial evidence and should be affirmed.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court if the Commissioner applied the "proper legal standards" and if "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test

ORDER - 2

requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

## I. The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 3

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31.

Rain argues that the ALJ erred by giving little weight to the opinion of treating physician Dan Wolf, D.O. *See* Dkt. 8, pp. 2-6. Dr. Wolf treated Rain from May 2004 through the application date in May 2012. *See* AR 17. Dr. Wolf submitted numerous opinions regarding Rain's functional abilities, including that she was markedly impaired in social functioning. *See, e.g.*, AR 412, 490-92. The ALJ gave Dr. Wolf's opinions minimal weight because, among other reasons, Dr. Wolf appeared to be advocating for and assisting Rain in her pursuit of receiving benefits. *See* AR 31-33.

An ALJ may give less weight to a physician's opinion where that physician "agreed to become an advocate and assist in presenting a meaningful petition for Social Security benefits." *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). Here, the ALJ found that Dr. Wolf appeared to be coaching Rain over email regarding how to explain her

ORDER - 4

history in way consistent with being granted benefits. *See* AR 32. This coaching included advising Rain on what to say and what to exclude during a consultative examination with another clinician and how to justify her alcohol relapse to the ALJ. *See* AR 228-29, 242. Dr. Wolf intentionally withheld information about a failed drug test in communication with Rain's attorneys because he felt the information coming out at hearing might "bias the judge." *See* AR 242. Furthermore, in an email to Rain, Dr. Wolf stated, "I am doing what I can to advocate for you. You know, I do my part, you do your part." AR 217. Therefore, substantial evidence supports the ALJ's finding that Dr. Wolf was acting as an advocate in assisting Rain's petition for Social Security benefits. The ALJ provided a specific and legitimate reason to discount Dr. Wolf's opinion.

Rain also argues that the ALJ erred by failing to find that she met a Listing at step three of the sequential evaluation process when Dr. Wolf opined that she met Listings 12.04 and 12.06 (affective disorder and anxiety disorder). *See* Dkt. 8, pp. 8-10. However, as discussed above, the ALJ provided sufficient reasons to discount the opinion of Dr. Wolf. The ALJ found at step three that Rain's mental impairments caused no more than moderate limitations based on the medical evidence in the record to which she afforded the most weight. *See* AR 20. Substantial evidence supports this finding.

**II.     The ALJ's Evaluation of Rain's Severe Impairments**

At step two, "the medical severity" of a claimant's impairments is considered. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant has no "severe medically determinable" impairment, then she will be found not disabled. *Id*. An impairment is "not severe" if it does not "significantly limit [the claimant's] mental or physical abilities to do basic work activities." 20 C.F.R. § 416.920(a); *see also* Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 at *1. Plaintiff has the burden

ORDER - 5

of proving that her "impairments or their symptoms affect her ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

The step-two inquiry, however, is a *de minimis* screening device used to dispose of groundless claims. *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Once step two is resolved in a claimant's favor, harmful error only occurs if the ALJ fails to properly analyze evidence of the non-severe impairments that shows work-related limitations beyond those assessed in the RFC. *See Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (error is harmless where it is "inconsequential to the ultimate nondisability determination").

Rain argues that the ALJ erred by failing to find several mental disorders to be severe impairments at step two of the sequential evaluation process. *See* Dkt. 8, pp. 6-8. However, the ALJ found that Rain had the severe impairments of affective disorder, anxiety disorders, and histrionic personality traits, and continued with the sequential evaluation process. *See* AR 16. The mental disorders that Rain argues should have been found to be severe impairments were all identified by Dr. Wolf and David Jarvis, M.D. *See* Dkt. 8, pp. 6-8. The ALJ fully evaluated Dr. Wolf's opinion in her assessment of Rain's RFC, rejecting Dr. Wolf's opined limitations for sufficient reasons, as discussed above. *See* AR 31-33. The ALJ also fully evaluated Dr. Jarvis's opinion in forming the RFC, accepting some of his opined limitations and rejecting others for reasons that Rain fails to challenge. *See* AR 31. Therefore, Rain fails to establish any work-related limitations stemming from the impairments found not to be severe that were insufficiently analyzed by the ALJ. Rain has not shown any harmful error in the ALJ's assessment of Rain's impairments at step two and, as required, thereafter.

ORDER - 6

### III. The ALJ's Evaluation of Rain's Credibility

Questions of credibility are solely within the control of the ALJ. *See Sample*, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834.

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen*, 80 F.3d at 1284. The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *See id.*

Rain argues that the ALJ erred in finding that Rain's allegations were not fully credible. *See* Dkt. 8, pp. 10-14. The ALJ found Rain's allegations not to be fully credible for several reasons, including that Rain likely exaggerated her symptoms for the purpose of receiving controlled substances. *See* AR 30. A claimant's drug-seeking behavior is a clear and convincing

ORDER - 7

reason to discount her credibility. *See Edlund*, 253 F.3d at 1157. The ALJ noted that Rain repeatedly reported "underfilled" or "stolen" prescriptions to Dr. Wolf in attempts to obtain additional controlled substances, to the point that Dr. Wolf had to tell her that he would not replace stolen medications unless a police report was filed. *See* AR 27, 442, 597, 603, 612, 616, 640, 649-50, 681-82. When Dr. Wolf advised against the use of controlled substances and refused to prescribe any more, Rain went to the emergency room or sought a new provider for prescriptions. *See* AR 205, 213-14, 229-31. Therefore, the ALJ provided a clear and convincing reason supported by substantial evidence for discounting Rain's credibility.

### IV.     The ALJ's Assessment of Plaintiff's RFC

If a disability determination "cannot be made on the basis of medical factors alone" through step three of the sequential evaluation process, the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 at *2. A claimant's RFC assessment is used at step four to determine whether she can do her past relevant work, and at step five to determine whether she can do other work. *See id.* An RFC is thus what the claimant "can still do despite his or her limitations." *Id.*

Rain argues that given the ALJ's harmful errors alleged above, the RFC assessed by the ALJ is not supported by substantial evidence. *See* Dkt. 8, p. 10. But because, as discussed above, the ALJ did not commit any harmful error, here too the ALJ did not err.

### V.     The ALJ's Finding of No Good Cause for Rain's Failure to Appear at the Hearing

Rain failed to appear at her hearing, but her attorney did appear. *See* AR 43-46. After the hearing, the ALJ issued a Notice to Show Cause for Failure to Appear. *See* AR 194-97. The ALJ

ORDER - 8

considered Rain's response but found that she failed to show good cause and therefore constructively waived her right to appear. *See* AR 14.

Rain argues that she showed good cause according to the standard found in the Hearings, Appeals, and Litigation Law Manual ("HALLEX") 1-2-4-25. *See* Dkt. 8, pp. 14-17. However, the Ninth Circuit has held that "HALLEX does not have the force and effect of law, it is not binding on the Commissioner," and reviewing courts "will not review allegations of noncompliance with the manual." *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000). Because Rain was sent notices before the hearing, she was given an opportunity to show cause after she failed to appear, and the ALJ considered her response and gave reasons for denying the response, Rain received a meaningful opportunity to be heard and due process was satisfied. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

## CONCLUSION

The ALJ properly concluded plaintiff was not disabled. Accordingly, the Commissioner's decision to deny benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this 23rd day of May, 2016.

Ronald B. Leighton
United States District Judge

ORDER - 9